Next is 20-1852, Traxcell Technologies v. Sprint Communications. Mr. Ramey, please proceed. Good morning Judge Prost, Judge O'Malley, and Judge Stahl. If it pleases the Court, may I begin? Please. I'd like to start with the issue of Traxcell's objections to the report and recommendations finding of non-infringement of Claim 12 of the 284 patent. We did, in fact, make objections and we found that both the magistrate court, the district court, and followed by Sprint's misapplied this court's case on infringement of a means plus function limitation. Concentrating, like the magistrate judge did, on how the identified structure operates rather than determining whether the identified structure performs the corresponding functions. And I'm sorry, Mr. Ramey, just to be clear, is that issue connected to Claim 1 of the 284 patent? No, Your Honor, this has to do with Claim 12 of the 284 patent. Okay. If it's okay with the Court, I may ask to address Claim 1 later on, but I do understand from the previous argument that that may be a short argument on my part. Okay, thank you. Please proceed. Nothing, okay, so the magistrate, okay, so nothing in the identified functions of receiving the performance data and corresponding locations from said radio tower and correcting radio frequency signals of said radio tower requires the added additional steps that the district court put forward at what you'll find in appendix pages 00122 through 123. The claim function simply doesn't require these extra steps, these extra limitations. Therefore, the magistrate judge was in error when he required these functions, and that caused, of course, the district court when those… Mr. Ramey, this is Judge Stoll. As I understand it, the magistrate judge construed the corresponding structure and the specification to be the algorithm in certain figures of the 284 patent, right? And I think that you did not dispute that at all, that there was a means-plus function claim and that the court identified the correct corresponding structure. So then, when you look then at whether the accused device has that corresponding structure, don't you have to consider all of the corresponding structure that was undisputed and identified by the district court? No, Your Honor. My understanding of the case law is that we're looking to make sure that it performs the function in substantially the same way, producing substantially the same results. So we don't need to look at any extraneous functions. We just need to look at the structure necessary to perform that function. Do you think that because we're just focusing on way and result, that you don't have to worry about all the steps of the algorithm? I mean, if you're performing different steps other than those specified in the corresponding algorithm, how is that not in a different way? Your Honor, so the core function is merely collecting these operational parameters and then making adjustments to the network base to correct and improve radio frequency communication. That's what the means-plus function claim limitation is, and the structure that we identified as doing that, figures 38A, 38B, and 38C, and then column 54 to column 55 from the specification describe how one embodiment from the patent performs that function of collecting operational parameters and making adjustments to the network based on those operational parameters to increase radio frequency communications. But to use means-plus function claiming under 112.6, you are choosing to have your claim limited to the corresponding structure, whether it's one embodiment with specification or not. I heard you to be emphasizing it's just one embodiment, but it has to be the same or equivalent corresponding structure in the accused device, right? Yes, Your Honor, it has to be, the structure doesn't have to be the same. The structure, in fact, can be different. What we concentrate on is whether the functions perform the same, produce the same results substantially the same way by that structure. So it's a slightly, I would take it as a slightly different nuanced approach to that. We're not saying that the structure can be vastly different. The structure has to be similar enough that it produces the same function in the same manner. So that's what we put forward, and we think that, in fact, does perform that. Counsel, I still don't think you're understanding Judge Stoll's question. This is Judge O'Malley. Performing the same function is not enough, correct? I think the problem is that you have a fundamental misstatement of the law in terms of what you think you need to show. Well, Your Honor, we don't, okay, Your Honor, I do understand what the court is saying, but if you go to the case, the Beauregard case, that when the court construed the claim to mean the funnel means, right, and when the court put in the construction process of judging infringement, it set certain limits on that, and that's what the court took away. So I think that we can come back to this particular analysis and say that the court identified a function in a structure. The court identified the function of just doing that, of what we just went through earlier, not to read it back into the record. So what we're looking for is a structure that performs that function in substantially the same way. So that's the way that we put the brief forward. In fact, if you go to page, pardon me, Your Honor, if you go to appendix pages 00-98-138 at page 24, it again talks about what the district court is saying, that the court fails, or the tri-cell fails to provide an analysis for several aspects required by the claims. But the claims, in fact, don't require that. The claims are just a means plus function where we identified the structure that was agreed. In fact, I think we're the ones that proffered the structure. And then the function was also agreed by the court, and the court set it forward, and the court went to great lengths to say that this function, to go a little bit further, doesn't even require location-based correction. So the court fully got into that. So the identified structures that we have from the Verizon and Sprint systems were ones that performed those particular functions, Verizon, CSUN, and the LSM from Sprint's device. So the district court erred by focusing on how the identified structure operates rather than determining whether the identified structure performs the function of receiving said performance data. I think you're the one who's in error here. It has to do both. The district court properly said that performing the function is not enough. It has to do it in substantially the same way. So, Your Honor, it's our position, and my apologies to the court, but it's our position, if I wasn't clear about that, my apologies, that we do do it in substantially the same way. And then we ran through how we did that by providing the testimony of Dr. Hildreth, who identified Samsung's LSM and Verizon's CSUN for how they wanted to analyze for Sprint's ANR, automatic neighbor relations operational parameters, and how they configured thresholds, updated, and monitored in our briefing. And we did the same thing for Sprint's minimization of drive test. So we did attempt to, so I wasn't trying to say the structure didn't have to be substantially similar. And if I did say that, my apologies. I understand the law that it has to be substantially similar. It's our position that they are. And then I'm going to drop from the argument claims 1 through 11 of the 284 patent, and I'm going to go to what I think is maybe a larger issue in this case, if I might please the court to talk a little bit about the error that the district court in requiring the patent when they use the term program to have actually performed the claim functions. And I think it's been the law from this court in the federal courts for some time that whether program capability ultimately is executed is required only for infringement of a patent and method claim, not a system claim. And further, a means plus function claim, the means don't have to be actuated. So the district court erred by failing to recognize that each of Sprint and Verizon's wireless networks are programmed to operate in two modes. The programs operate in a mode where they take wireless device measurements from the network, and the programs operate in a mode where they take wireless device measurements from other places. And there's ample record evidence that we cited that Verizon's wireless network and Sprint's wireless network gets its network measurements from the wireless network, specifically for Sprint. Sprint requires its devices to be able to support location determination by the wireless device, the UE, through assisted GPS, AFLT, which is advanced forward link trilateration, and cell sector or MS-assisted, mobile station assisted manner of location determination. And there we provide ample sites in the briefing to the courts. And further for Sprint, we talk about Sprint's CSUN being able to do the same thing as well. And we do present evidence concerning Sprint's wireless network and how it determines location of a wireless device from local computation from the network. And we have Google's corporate representative that testified that Google Maps, no matter for what, always uses location information determined from the network in its final location determination. And Sprint uses the location determination from its elements of the position determination entity, or PDE, or from the Sprint LSM uses a variety of different methods, such as OTDOA or call trace analysis to perform its location determination. Counsel, am I correct that you actually agreed to the claim construction of location? Your Honor, and yes, Your Honor, and this gets us back a little bit to the argument concerning whether or not the issue had been passed on. And our – if I may, Your Honor, I'll finish your question. Yes, please answer Judge O'Malley's question. Yes, and so this goes back to our position that's slightly similar to the Nokia case. We had believed that the issue was passed on by the district court from the Nokia briefing. And so we didn't think that the court – we were going to be able to convince the court. We thought we had better arguments for the single computer argument we were making. So we were allowing that issue. So we didn't agree with it. Our briefing shows that it wasn't agreed, and we maintained in our claim construction objections and the rest that we did contest that issue. But the court is correct that we did agree to limit the issues that the district court was going to decide because we felt that that issue had already been passed on by the district court. Okay, well, where does that leave us, Mr. Ramey? If you stipulate to a trial court's construction, we take that as a given. We don't reassess that because of the other things you're talking about that are going on, right? We take that as a given, right? Yes, Your Honor. It could be taken as a given. But here I think maybe what we would suggest to be the more appropriate remedy would be to consider whether or not that issue had been passed on by the district court, whether we were generating new arguments, which we're not. This is clearly issues that we've briefed all along the way to the district court. You're basically saying then we're supposed to assume that anything that went on in a different case is somehow preserved in this case, even though you don't preserve it. Your Honor, no, I think we did, in fact, preserve it through our objections and through the briefing. We only agreed to it. When you say you preserved it, are you talking about stuff that went on in the Nokia case or the stuff that went on here? And stuff that went on in this case as well, Your Honor. We think it was a preserved issue. And we think if you just go, the Forty case actually helps us in this regard because the issue that the appellate courts primarily look at is that they don't consider issues that have not been passed upon below. And that's not a concern for any claim destruction argument we're making because this has been, the district court and the magistrate judge has had the chance to pass on all these issues. Mr. Rainey, you didn't, I think I'm correct. In the first case, you didn't cite Forshee, even though it was the centerpiece for your responses to the concerns that we raised. I think the same is true in the second case. Forshee is not cited as a reason or a rationale for you to have been permitted to do this, is it? Yes, Your Honor, it is. And if I can reserve 30 seconds, I'll find that exact site and give it to you in my 30 seconds. Okay, we'll look forward to your answer on appeal, on reply. Let's hear from the other side. Mr. Krumholtz, are you representing Verizon? I'm sorry, I lost track. Yes, that's correct, Your Honor. I'm representing Verizon. I'm splitting my time with Spence Council. My focus will be on the 388 patent and the term location of the 024 patent. And Spence Council's focus will be on the 284 patent, specifically in validity for claims 1 through 11 and non-enfrichment for claim 12, as well as the term computer for the 024 patent. That's how we've divided our time. And I'll begin with the 388 patent. There's one issue on appeal with regard to the 388 patent, and that's whether the location of the wireless device is determined by the network or whether it's determined by the device. First, it's plain that the claim language requires that the location of the device be determined by the network. Representative Claim 1, for example, states that the wireless device receives the location information, quote, from the wireless communications network, end quote. Independent Claims 11 and 21 have the same language. And Traxel seems to admit as much on page 25 of its reply as well as admissions by its expert at his deposition, appendix page 4571. And finally, the prosecution history makes it clear that to overcome a 102 rejection, they added the second processor at the network, determining the location to get over the prior art. So I think it's clear what the claim requirements are in terms of the non-infringement position. So for Sprint, only Google Maps has been accused. For Verizon, it's both Google Maps and DZ Navigator, but the arguments are the same for each. Mr. Ramey made some confusing comments about the representative from Google Maps talking about the use of location information. That was in the context of the 388 patent, and what he explicitly said was that the location is determined by the device. It is not determined by the network. He was unequivocal in that testimony at page 2137 in the appendix. For DZ Navigator, we have the representative from ComTech, which is the company that provides the DZ Navigator product to Verizon, and he was equally unequivocal at page 2171 of the appendix that, again, the device determines its location rather than the network. Traxel does not refute that testimony. It doesn't try and challenge that testimony. Instead, it provides this undifferentiated mass of documents without ever explaining how they're relevant to the application or to the claims or to their assertions of infringement. I would make four general criticisms. One is that they make no attempt to tie any of those functions or documents to the accused products. Two, they rely on very old documents. Mr. Krumholz, this is Judge Prost. I just want to make sure we're talking about the same thing. Are you referring to the blue brief pages 37 through 41 or so and all of their citations and their footnotes? Okay, I just wanted to make sure we were on the same wavelength. Yes, exactly, particularly pages 37 and 38, where they just have a kind of alphabet soup of assertions without tying any of those in. And when they do look at documents, they're typically looking back at documents from the 2008 timeframe and not 2017 and forward, which is the relevant timeframe. And what's also significant is they made no effort to ever ask a single question of any witness about any of those documents at any time. They made a strategic decision not to find out what the real answers were. And that's all in the context of the fact that they had all the present-day documents. They had the present-day source code. But none of that is ever cited in support of any of their claims. Counsel, can I back up for a second because, again, you keep citing us to things. Am I to assume that all of your confidentiality markings are to be disregarded to the extent that you refer to anything that could support our conclusions? Yes. We will make that same representation, and we note. Mr. Krumholz, you were in the middle of telling us, I believe, that you are waiving the confidentiality requirements to the extent that you have cited anything in the briefs or that you're citing us to anything during your argument as well. Is that correct? That is correct, and I do note the panel's comments earlier about it would have been more proper to have done that at the outset, and we will certainly do that in the future. Okay. I appreciate that. Thank you. Go ahead. Yes, I confess I'm not exactly sure where I left off before. Were you talking about pages 37, 38 of the blue brief and those citations? Right, right. So the fundamental problem with their sites is, one, they make no attempt to tie any of those documents or those functions to the accused navigation products. Two, they're generally relying on very old documents dating back as far as 2008 to prove infringement in 2017 and later. Three, they made the strategic decision not to ask any witness about any of those documents in order to find out whether any of those documents are actually relevant to the accused products. And four, we had produced all present-day documents and source code, and they made no attempt to cite any of those documents to try and prove their case. So they made a tactical decision to rely upon old documents without asking any questions about them and do it in an undifferentiated way, while not in any way rebutting the affirmative testimony of the two witnesses who have the subject matter knowledge. So we believe the judge was entirely correct in the finding of non-infringement with regard to 388 Patterson. Mr. Hrumholtz, this is Judge Stoll. I just wanted to ask you about the related cases. There is a number of related cases identified as being cases that will be directly affected by the court's decision. Are you familiar with any of those cases, and what issues those cases involve? I have a generalized understanding. I'm just going to, if you bear with me for a moment, I have a summary of what the cases are. So roughly, we have the Nokia case, which is the SON patents only. We have a consolidated Verizon Sprint T-Mobile, which we're dealing with here, which is the SON and the 388. The T-Mobile matter was stayed pending the outcome of the Nokia appeal because it's the same product. Mr. Hrumholtz, I think where you left off, you were talking about the related cases. I was just interested in knowing if any of the pending cases in district court had related issues. Yes. So there is a T-Mobile case that has stayed pending the outcome of the Nokia appeal because it's the same accused product. And then there is a new case that- Are the same claims at issue? I mean, now there's claim language, so the claim construction issues, are those the same? I'm sorry, this is Judge O'Malley. That's my understanding. I have to give a caveat that I'm not representing Nokia, but that is my understanding. And then there is another case that Traxler has brought against T-Mobile and Nokia that involves new patents in the same family. Those have been stayed pending resolution of the appeals. I can't tell you specifically. My understanding is it stayed because there is a potential of impact, even though they're new patents, but because they're in the same family. But I can't tell you specifically how. Okay. Well, Mr. Ramey, we'll hear from you again after your friends complete their arguments. So I hope you will be prepared to give us an accurate summary of the pending cases. Yes, Your Honor. So if I may, with the time that I've left, on the location, I think there's been- So there are two arguments for non-infringement that are independent of each other. One concerns whether the CSUN uses location at all, and the answer is that it does not. It measures distance through something called a timing advance. Timing advance data is a metric that measures the time that it takes for a message to travel from a wireless device to a base station. From that data, you can calculate distance. That's not dependent on claim construction. And then just lastly, with regard to the other argument is the court has heard about the construction for location. Assuming that construction is upheld, the CSUN uses bins. It puts up data into bins, which are circles around a base station that are separated geographically, that certainly fall within the definition of bins, and their expert, Mr. Helgert, admitted as much in his deposition. Thank you. Thank you, and again, I apologize for the technical problems that I had. Okay. Mr. Schmalzbach, you have seven minutes. Good morning, Your Honor, and may it please the Court, Brian Schmalzbach for Sprint. I'll address some additional reasons for affirming as to the CSUN network tuning patents. Starting with the 284 patent, my understanding was that Mr. Ramey said that he is dropping the Claim 1 argument, so I'm happy to answer any questions that Your Honors have as to Claim 1 and its dependence. But otherwise, we agree with the District Court that Claim 1 is indefinite, and if there are no questions, I'll move on to Claim 12, which Mr. Ramey focused on. As to Claim 12, Traxell's only challenge on appeal is that the District Court required proof of unclaimed extraneous functions in the specification. But Traxell never made that objection to the report and recommendation. Its objection was that it did show evidence that the accused system practiced the nine structural aspects of the construed term that the District Court found missing. That's quite different from the argument he makes now. But that objection never put the District Court on notice that it needed to decide whether those nine structural aspects were required structure or extraneous functions. But on the merits, the only real dispute now on appeal is whether Traxell needed to present evidence addressing, in some respects, those nine aspects of the corresponding structure or their equivalents. Traxell's position is that it doesn't. But it does. Each of those nine structural aspects implements the agreed functions of either receiving performance data and location from a radio tower or correcting the radio frequency signal of said radio tower. The problem for Traxell is that Traxell itself proposed those nine structural aspects identified by the District Court to overcome the defendant's indefinite misargument. For example, Traxell proposed figures 38B and C as structure corresponding to that function. But Traxell provides no evidence at all that the accused sprint product corresponds to anything in the way those figures implement the construed function. What we ask your honors to agree with is the proposition that you can't propose structure corresponding to a function to defeat indefiniteness and then turn around and argue that that structure you proposed is extraneous to that function. And that same problem is fatal for the doctrine of equivalence since Traxell can't prove equivalence by ignoring large chunks of the structure that Traxell itself proposed. Now, as to the computer limitations, the District Court was right that the SON claims reciting a computer, which is most of them, require a single computer to perform the claimed functions and write that no single computer in the accused sprint systems satisfies that requirement. As your honors discussed in the Nokia argument, Traxell's challenge to that claim construction is waived. But I'd like to focus on the point that this was more than a simple forfeiture. This was Traxell's intentional strategic decision. Traxell knew the deadline for objecting to the Markman order because Sprint and Verizon had filed their own timely objections noting the deadline. Traxell had a different strategy. In its own words at Appendix 2761, Traxell, quote, intended to make its objection to the claim construction order if necessary after the ruling on summary judgment. That intentional strategy should not be rewarded on appeal. And the District Court's construction was correct in any of that. The asserted claims always refer back to the same computer performing additional functions, confirming that a computer or the computer or a first computer is singular. When the claims refer to another computer performing additional functions, they do so explicitly by specifying a second computer. And the prosecution history confirms that meaning. The applicant repeatedly and clearly distinguished prior art that used multiple computers by saying that this invention needs a single computer. Now Traxell then tries to backdoor its waived multiple computer construction under the doctrine of equivalence. But those equivalence contentions are not preserved. Traxell moved for leave to add equivalence contentions after the deadline under local rules. And the District Court correctly found no good cause to excuse that tardiness. But Traxell does not even appeal that no good cause holding either in the blue brief or the gray brief, let alone show why that holding was an abuse of discretion. As to infringement, it was Traxell's burden to present evidence that a single computer practiced each element of the asserted claims. But Traxell fails to overcome the undisputed evidence that the accused Samsung DSON system used by Sprint is, as the name suggests, distributed across multiple systems and multiple computers. So the need to involve both the LTE system manager or LSM and one or more computers at base stations called eNodeBs means that the single computer limitation is not satisfied. In particular, the LSM alone can't do it. The LSM is the computer that Traxell focuses on in this reply brief. Because Traxell admits that the LSM is just a system interface that manages and maintains other network computers like eNodeBs. Traxell's real argument in the brief appears to be that it should be enough to have a single computer, quote, But that's the same unpreserved equivalence argument, that multiple computers should be equivalent to a single computer. The summary judgment was correct on all the asserted claims containing that computer term. If the court has no questions on the 284 claims or the computer limitations, we would ask you to affirm. Thank you. Hearing no questions, all right, Mr. Ramey, we're back for your rebuttal time. And could you take a few minutes just to tell us what your assessment is of the pending cases that we've been asking the other side about? Apologies, Your Honor. How much time should I set for Mr. Ramey? He exceeded his time. Oh, OK. Well, give him four minutes. OK, thank you. Yeah, but I'll be flexible in terms of because obviously all of us have asked about the pending cases and the overlap.  Yes, Your Honor, I'll be as quick as I can. And I do have four points. If I could take 15 seconds piece of no more than a minute to address the rebuttal. But I'll do that after the the case synopsis, I guess. Yes. So there are multiple pending cases. The Nokia case has the issues of claim construction of location and first computer. And the case that we heard earlier today, that's the case. Yes, Your Honor. OK, we know about that case. OK, OK, I'll go on. Then there was a case for Sprint, a case for Verizon, a case for AT&T, and a case for T-Mobile. The AT&T case is settled, and the case for T-Mobile is stayed. And so the case for Verizon and Sprint is a case under disappeal. The Sprint, the stayed T-Mobile case has similar issues, but we haven't conducted any discovery. So we don't think that any order from this court necessarily would be dispositive as to the 388 patent. There may be certain things that come out of the claim constructions for computer and location that would affect the viability of claims on the SON patents, that being the 024 patent, the 320 patent, and the 284 patent. But the 388 patent is a slightly different beast, Your Honor, for the related cases that are along the very same timeline as the Sprint and Verizon case. There has been a later filed T-Mobile case that is on different patents that are unrelated in large respect, two of them, to the SON patents. One is the 388 patent, in fact, and one is the 196 patent, and then there's a 353 patent that more is SON related. So the issues from this court regarding the construction of first computer and location would directly impact, but not foreclose necessarily those claims, because the claims, again, are different. They claim different aspects of the invention. But the 388 patent is in play in this case, so will our decision in this case with regard to the 388 necessarily or likely impact the other T-Mobile case? Not likely, Your Honor. If I can explain briefly, my apologies to the court. The 388 wasn't brought up on a claim construction issue. It was more about sufficiency of the evidence issue. Okay. And then there are actually three later filed cases, once against Verizon and Ericsson, again, with different patents, one against Apple and one against Google, that are only recently filed within the last six or seven months, that are new patents that are issued well after even all these cases were finally determined most of the time. And so they actually disclaimed or got rid of any apparent prosecution history disclaimers. So there's a lot of other cases down the road, but the impact, we've tried to craft the claims and continue an application. Since the impact from this case, we've learned from what the district court and this court will tell us and try to improve those later patents. If that helps the court. Thank you. Judge O'Malley and Judge Stoll, did you have any further questions about the pending cases? None for me. Okay. Then please proceed with the remainder of your reply argument. Yes, Your Honor. I'll take no more than a minute. Just to be clear, I wanted to answer the court's question. I was citing to the 4C. Your answer about 4C. Yes, Your Honor. So 4C was what we considered to be the seminal case, the one that set forth the standard. We actually cited that on page 8 of our reply in the Golden Bridge Tech versus Nokia Inc. case 527-1318. That was in response to arguments brought up by Sprint and Verizon. Three other very quick... I'm sorry. Can you just help me with this? In this case, you say you cited it on page what? Page 8 of our reply, Your Honor. I'm looking at the table of contents and the table of authorities, and I'm not seeing it cited. But you're saying it's cited on page 8? Yes, Your Honor. It's cited through the Golden Bridge Technology case. It was talking about 4C in that case. Okay. So in a footnote, you have a cite to CEG Golden Bridge Technology? Is that what you're telling me? And that case cites 4C? Yeah, it's the one that discusses that principle. Yes, Your Honor. Okay. Thank you. Anything further? Yes, Your Honor. I'll be very quick with these last three points. Just to be clear, I heard opposing council, opposing council say that we were dropping Claim 1. We were not dropping it, but I understand the court's likely to invalidate it, but we weren't dropping that argument in the appeal. Just to be clear. And then real quick, the evidence of the nine functions brought up by appellees' counsel was new argument, the way that they addressed it. We did make objections, and that was never brought up on this appeal that we failed to object. And lastly, if you go to page, what the court referred to as page 37 and 38, which is 38 and 39 of the corrected brief. And if you go to the footnotes, we cite new evidence. And so I'm unclear as to how they got that this is old evidence. We referenced specifically the use of location determination all throughout the footnotes in those sites. And these are documents produced by Verizon, not our documents. And we go through a painstaking effort of disclosing every instance of how locations are determined and how through these various network-based determinations or wireless device determinations, and then how performance measurements are taken. So I just want to say that these are new documents. These are documents produced by Verizon and a sprint later on on the next page. So we did, in fact, cite new documents, not old documents trying to make our case. Which of the documents are from 2017 or later? Your Honor, any of the – okay, Your Honor. So, for instance, the very first one, VZW underscore Traxel, and this is in footnote 131. My apologies, Your Honor. 1725 through 1797, that talks about the Verizon position engine determination or use of determining wireless device location. And then we specify by pages what those particular pages are. 1749, cell location must be enabled. 1750, VZW assisted must be enabled. So we did, in fact, specify particularly what those various functions are and how they tie back to the accused's instrumentalities by painstaking detail of going through every page and explaining what it shows. So there is a plethora of evidence tying it back. And every one of these documents, Your Honor, that's produced by Verizon, these are new documents. These aren't the old documents. The old documents were documents produced by Traxel. They had a Traxel base number on them. Well, Mr. Ramey, I think your friend's criticism, which I think might have some heft, and a point in which the district court made, is that you cite all these. You've got numerous footnotes and millions and tons of documents, and there's never a sufficient explanation as to the link between those documents and the mapping feature. And I think that's the point that the district court was making, and I think that's the point your friends from Verizon were making as well. Your Honor, so we cited to the particular page within those documents for support, and we explained what those particular pages show. And if the court determines that that wasn't sufficient, we'll stand on what we did. We weren't trying to hide the ball. What we said is the court can appreciate countless hours, countless hours going through these documents and pulling out what we felt showed for the district court's benefit how these accused instrumentalities did, in fact, practice the claim limitations. We set it forth in the footnotes. But I just wanted to specify, I have well exceeded my time, and I greatly appreciate the courts indulging me, and I'll pass on the rest of the case. Thank you, Your Honor. Unless you have questions. Any questions from the panel? Hearing none, thank you. Thank both parties. The case is submitted.